UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| CLIFFORD CUMMINGS, et al., | : | Case No. 2:24-cv-4041 |
| Plaintiffs, | : | |
| vs. | : | District Judge Edmund A. Sargus, Jr. |
| | : | Magistrate Judge Kimberly A. Jolson |
| STATE OF OHIO, *et al.*, | : | |
| Defendants. | : | |

## ORDER AND SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter is before the Court on three motions filed by Plaintiffs: Request for Delay in Response to Objection to Report and Recommendation, (Doc. 15); Motion to Amend Complaint to add Sergeant Shane E. Meddock as a Defendant, (Doc. 17); and Motion to Amend Complaint, in which Plaintiffs seek leave to file a First Amended Complaint, (Doc. 18). The first is **DENIED as moot**. (Doc. 15). As to the latter two Motions (Docs. 17, 18), the Court **TERMINATES** them **as moot** and screens Plaintiffs' First Amended Complaint, (Doc. 18-1), as required under 28 U.S.C. § 1915(e)(2).

I.     **BACKGROUND**

Plaintiffs bring this civil rights action asserting that Trooper Sabo of the Ohio State Highway Patrol (OSHP) violated their constitutional rights under the Fourth Amendment by unreasonably searching them and their vehicle and subjecting them to false arrest and imprisonment. On November 8, 2024, after Plaintiffs filed their initial Complaint, the Undersigned issued an Order and Report and Recommendation, concluding Plaintiffs' claims should not proceed against all Defendants named in the Complaint. (Doc. 11). Specifically, the Undersigned

determined Plaintiffs' claims against Defendant Trooper Sabo in his individual capacity for violations of their Fourth Amendment rights on the basis of the alleged illegal search and seizure and false arrest and imprisonment could proceed for further factual development. (*Id*. at 5–6). But the Undersigned recommended Plaintiffs' claims against the State of Ohio and OSHP be dismissed for two reasons. (*Id.* at 4–7). First, neither the State of Ohio nor the OSHP are a "person" subject to suit under Section 1983. *See Hohenbery v. Shelby Cnty.*, 68 F.4th 336, 342 (6th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)). Second, absent an express waiver, a state and its agencies (like OSHP) are immune from damages suits under the Eleventh Amendment. *See Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017). For this reason, the Undersigned also recommended that any claims against Trooper Sabo in his official capacity for money damages be dismissed because a claim against him in his official capacity as a state trooper would be, in reality, a way of pleading the action against the entity of which he is an agent. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Upon their motion, the Undersigned also granted Plaintiffs leave to amend to "change certain dates and to assert a new claim for malicious prosecution." (Doc. 11 at 8). Because Plaintiffs did not attach their proposed amended complaint to their motion to amend, the Undersigned ordered them to file an amended pleading within twenty-one days, along with the necessary service and summons forms for Defendant Sabo. (*Id.* at 7–8).

Plaintiffs filed an objection to the November 8 Report and Recommendation ten days later. (Doc. 12). Four days later, Plaintiff Clifford Cummings filed a letter asking for an extension of time to file supporting documents for those objections. (Doc. 15). That same day, Plaintiff filed another set of objections to the November 8 Report and Recommendation. (Doc. 16). On November 22, Plaintiffs filed two motions to amend their complaint, one of which contained the

2

proposed amended complaint as ordered. (*See* Docs. 17, 18, 18-1). The Court turns to Plaintiffs' pending motions and then to the initial screen of the First Amended Complaint.

## II.     PLAINTIFFS' REQUEST FOR DELAY (DOC. 15)

On November 22, Plaintiff Clifford Cummings filed a letter requesting an extension of time to file supporting documents pertaining to his objections to the November 8, 2024, Order and Report and Recommendation. (Doc. 15). In the letter, Plaintiff states he "already filed" his objection to the Report and Recommendation but is "still in the process of sending additional supporting documents" to the Court. (*Id*.). The Undersigned notes that Plaintiff filed objections to the Report and Recommendation on November 18, 2024, (Doc. 12), and again on November 22, 2024, (Doc. 16). Accordingly, the Court **DENIES** Plaintiff's request for an extension of time to file objections and supporting documents (Doc. 15) as **MOOT** because Plaintiff has now filed two sets of objections to the Report and Recommendation.

Notably, the Court has warned Plaintiff Clifford Cummings that if he continues to file documents by mail, his electronic filing privileges will be revoked. (Doc. 19). The Court now warns Plaintiff that, moving forward, he should file only one set of objections. If he chooses to submit duplicative filings, the Court may choose not to consider them or may revoke his electronic filing privileges. *See Williams v. Miniard*, No. 1:22-cv-001, 2023 WL 3113700, at *6 (S.D. Ohio Apr. 27, 2023) (noting that Federal Rule of Civil Procedure 72 does not allow for multiple sets of objections); *Needham v. Butler Cnty. Jail*, No. 1:19-cv-294, 2019 WL 5882643, at *1–2 (S.D. Ohio Nov. 12, 2019) (discussing that the grant of electronic filing privileges is "a privilege" within the Court's discretion and that it may be revoked for the filing of "procedurally improper" motions).

**III. PLAINTIFFS' MOTIONS TO AMEND THE COMPLAINT (DOCS. 17 AND 18)**

In the prior Order and Report and Recommendation, the Undersigned granted Plaintiffs' motion for leave to amend the complaint, (Doc. 7), noting Plaintiffs are permitted to amend their complaint once as a matter of course without leave of court where, as here, the complaint has not been served. (Doc. 11 at 8). The Undersigned noted Plaintiffs failed to attach the First Amended Complaint to their motion and directed Plaintiffs to file it within twenty-one days. (*Id.*).

Plaintiffs responded to the Court's Order by filing two additional motions to amend. (Docs. 17, 18). First, Plaintiffs seek leave to amend the complaint to add Sergeant Shane Meddock as a Defendant. (Doc. 17). Next, Plaintiffs seek leave to amend to add new claims, including claims for malicious prosecution, excessive force, and violation of state public records law. (Doc. 18). The First Amended Complaint is attached to the second motion to amend. (Doc. 18-1).

Because the Undersigned has already granted Plaintiffs leave to file a First Amended Complaint, the Undersigned hereby **TERMINATES** the pending motions to amend **as moot**. (Docs. 17, 18). The Clerk of Court is **DIRECTED** to file the First Amended Complaint on the docket of this case. The First Amended Complaint (Doc. 18-1) "supersedes [the] earlier complaint for all purposes." *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013).

**IV. SCREENING OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

Now, the Undersigned must determine whether the First Amended Complaint (Doc. 18-1), or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A.

### A. New Allegations in the First Amended Complaint

In the First Amended Complaint, Plaintiffs name Trooper Sabo and Sergeant Meddock of the OSHP as Defendants. (Doc. 18-1 at 1). Plaintiffs no longer name the State of Ohio or the Ohio State Highway Patrol as Defendants, and the First Amended Complaint contains no allegations against these prior-named Defendants. (*Cf.* Doc. 12 at 1–2 (objecting to the Undersigned's previous recommendation to dismiss these Defendants)).

Plaintiffs raise new claims of malicious prosecution, excessive force, and violation of Ohio's public records law. (Doc. 18-1 at 3–4). Just as they did in their first Complaint, Plaintiffs assert Trooper Sabo violated their Fourth Amendment rights when he falsely arrested and imprisoned them for obstructing official business (and ultimately possession of drugs) and unreasonably searched them and their vehicle pursuant to that unlawful arrest. (*Id*. at 2). Plaintiffs further allege they were subjected to excessive force when Trooper Sabo drew his gun and pointed it at them, and to malicious prosecution because they were detained for eight days at the Tri-County Jail. (*Id.* at 2–3). Eventually, all charges were dismissed. (*Id.* at 2). When Plaintiffs sought public records relating to the investigation, they discovered officers had muted their body camera during fifteen minutes of the encounter. (*Id*. at 4, ¶ 3.16)

### B. Analysis of the First Amended Complaint

Plaintiffs allege six claims for relief. In counts one and two, Plaintiffs assert a violation of their Fourth Amendment rights on the basis that Trooper Sabo conducted an unreasonable search and seizure of their persons and vehicle and subjected them to false arrest and imprisonment by detaining them without probable cause. (Doc. 18-1 at 3). In count three, Plaintiffs argue Trooper Sabo's actions in pursuing the baseless charges against them, which resulted in them being held in custody for eight days, constituted malicious prosecution. (*Id.*) In count four, Plaintiffs assert a

5

claim for "supervisory liability" against Sergeant Meddock for his failure to supervise Trooper Sabo, resulting in their unlawful arrest and detention. (*Id.*) In count five, Plaintiffs contend Trooper Sabo's act of drawing his gun and pointing it at them constituted the use of excessive force. (*Id*. at 3–4). Finally, in count six, Plaintiffs allege a violation of Ohio's public records law on the basis that Defendants muted the audio of their body cameras during a critical phase of the investigation. (*Id*. at 4).

Plaintiffs allege they have suffered emotional distress, humiliation, and "other damages." (*Id*. at 4). They demand $9,999,000 in monetary damages, as well as costs and fees. (*Id*.)

1. *Fourth Amendment Claims Against Trooper Sabo in his Individual Capacity*

At this stage in the proceedings, and without the benefit of briefing by the parties, the Undersigned concludes that Plaintiffs' Fourth Amendment claims of illegal search and seizure, false arrest and imprisonment, malicious prosecution, and use of excessive force against Defendant Trooper Sabo in his individual capacity may proceed for further development. For clarity, the Undersigned is referring to claims one, two, three, and five. (Doc. 18-1 at 3–4). The Court advises Plaintiffs that this is only a preliminary determination. The Court has not made findings as to the merits of the claims being allowed to proceed at this juncture, nor has the court considered any potential defenses. Defendant Sabo is not precluded from filing a motion to dismiss, a motion for a more definite statement, or other appropriate motions under the Federal Rules of Civil Procedure. *See, e.g., Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

2. *Official Capacity Claims and Claims for Injunctive Relief*

The First Amended Complaint names Defendants Sabo and Meddock as Defendants, but Plaintiffs do not specify whether they are also suing them in their official capacities. In the prayer

6

for relief, Plaintiffs seek money damages, but paragraph 3.11 of the First Amended Complaint suggests Plaintiffs also seek injunctive relief:

> Trooper Sabo's arrest of the Plaintiffs without probable cause was an act outside the scope of his lawful duties. No officer, even in their official capacity, has the authority to conduct an unlawful arrest. As such, this claim falls under the *Ex Parte Young* exception to sovereign immunity, as it seeks prospective injunctive relief to prevent future unlawful arrests by officers of the Ohio State Highway Patrol.

(Doc. 18-1 at 2).

To the extent Plaintiffs attempt to assert claims against Trooper Sabo or Sergeant Meddock in their official capacity for money damages, it is **RECOMMENDED** that those claims be **DISMISSED with prejudice** for want of federal jurisdiction. As the Undersigned discussed in the prior Order and Report and Recommendation, the State of Ohio's Eleventh Amendment immunity also extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. (Doc. 11 at 6 (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974))). A suit against Defendants Sabo and Meddock in their official capacity as state troopers would, in reality, be a way of pleading the action against the entity of which Defendants are agents. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation omitted)). Therefore, the Court finds Defendants Sabo and Meddock are immune from suit in their official capacities to the extent Plaintiffs seeks monetary damages.

To the extent Plaintiffs seek "prospective injunctive relief to prevent future unlawful arrests by officers of the Ohio State Highway Patrol," (Doc. 18-1 at 2, ¶ 3.11), the Court also **RECOMMENDS** those claims be **DISMISSED with prejudice**. In *Ex parte Young*, 209 U.S.

7

123 (1908), the United States Supreme Court created a narrow exception to the application of sovereign immunity, permitting courts to maintain subject matter jurisdiction to hear a constitutional claim against an official acting under color of state law where prospective injunctive relief is necessary to end a continuing violation of federal law. The Sixth Circuit recently described the exception as follows:

> Under *Ex parte Young*, "suits against state officials seeking equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment." *Mich. Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 867 (6th Cir. 2000) (citing *Ex parte Young*, 209 U.S. at 159-60, 28 S.Ct. 441). This doctrine applies only when the plaintiff sues for "prospective [injunctive] relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). If the complaint fails to "make clear what those ongoing violations are," the exception does not apply. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017). Nor does the exception exist for injunctive relief "based entirely upon past acts and not continuing conduct that, if stopped would provide a remedy to" the plaintiff. *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003).

*Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023). But the Sixth Circuit cautioned that "[o]ne prerequisite for the *Ex parte Young* exception to apply is that the claimant must explicitly allege that a state official acted in her official capacity." *Id*. at 517 (citing *Long v. Tennessee*, 744 F. App'x 945, 946 (6th Cir. 2018)). This is because *Ex parte Young* is a limited exception, and "[a] state's immunity, therefore, cannot be abrogated by the plaintiff's simply leaving the capacity of the state actor unsaid in the complaint, to be guessed by the court and defendant." *Id*. ("In the absence of any explicit statement in the caption or body of the complaint that [a defendant] acted in her official capacity, the court lacks subject-matter jurisdiction to hear any claim for injunctive relief under *Ex parte Young*."). Here, the First Amended Complaint is ambiguous, at best, with respect to whether Plaintiffs have attempted to bring official capacity claims against the named Defendants.

8

But even reading the First Amended Complaint indulgently, Plaintiffs have not plausibly alleged that prospective injunctive relief is necessary to end a continuing violation of federal law. Plaintiffs, who live out of state, allege they were unreasonably searched and detained in November of 2022. (Doc. 18-1 at 1–2). After eight days, Plaintiffs were released and eventually all charges were dismissed. (*Id.* at 2). The First Amended Complaint is based entirely upon past acts, and Plaintiffs allege no facts suggesting there is any continued deprivation of their constitutional rights that could be the subject of injunctive relief. And even if Plaintiffs succeed in establishing that their constitutional rights were violated, any relief for such violation is retrospective in nature. As such, *Ex parte Young* does not apply here, and the Court lacks subject matter jurisdiction to hear Plaintiffs' request for injunctive relief. *See Ledford v. Adams*, No. 2:21-cv-390, 2021 WL 1536374, at *6 (S.D. Ohio Apr. 19, 2021), *report and recommendation* adopted, No. 2:21-cv-390, 2021 WL 2438878 (S.D. Ohio June 15, 2021) (recommending dismissal of official capacity claims against Ohio trooper seeking injunctive relief because "Plaintiff, a resident of Indiana, does not plead, and the undersigned is unable to imagine that he will have any future contact with the Ohio State Highway Patrol, and thus, he is unable to establish a real and immediate threat that the Ohio State Highway Patrol will illegally stop him while driving or otherwise interfere with his rights."); *see also Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 95 F.Supp.2d 723, 732 (N.D. Ohio 2000), *aff'd and remanded*, 308 F.3d 523 (6th Cir. 2002) (finding that named plaintiffs lacked standing for class-wide injunctive relief because they had been stopped only once and there was not a sufficient likelihood that they would be subjected to similar practices again in the future).

For the foregoing reasons, the Undersigned **RECOMMENDS** that all official capacity claims and any claim for injunctive relief be **DISMISSED WITH PREJUDICE**.

### 3. *Count Four Against Sergeant Meddock*

Next, the Undersigned considers the individual capacity claims against Sergeant Meddock. In count four, Plaintiffs seek to hold Sergeant Meddock liable for the actions of Trooper Sabo on the basis of supervisory liability. (Doc. 18-1 at 3). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Dillon v. Hamlin*, 718 F. Supp. 3d 733, 743–44 (S.D. Ohio 2024) (citing *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). "[A] supervisory official's failure to supervise, control, or train the offending individual is not actionable, unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Said simply, vicarious liability is not a plausible legal theory under Section 1983. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). To successfully sue Sergeant Meddock as a supervisor, Plaintiffs would need to allege that Meddock "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F. 4th 752, 761 (6th Cir. 2021) (cleaned up).

This, Plaintiffs have not done. Notably, Plaintiffs have not alleged that Sergeant Meddock was directly involved in the incident that led to their arrest or the circumstances surrounding their continued detention. (Doc. 18-1 at 3). And they do not allege that Sergeant Meddock specifically encouraged the illegal conduct at issue here, or that he implicitly authorized, approved, or knowingly acquiesced in the conduct of Trooper Sabo. (*Id.*). The only allegations pertaining to Sergeant Meddock are a terse statement that his "supervisory signature" was added to the OSHP's Report of Investigation nine days after the incident and a bald assertion that Meddock "was

10

preparing to release [Plaintiffs] prior to Trooper Sabo's actions." (Doc. 18-1 at 3, ¶ 3.13, 3.14). Plaintiffs conclude "[t]his suggests Sergeant Meddock's disagreement with Trooper Sabo's arrest and detention of Plaintiffs." (*Id*.) The Undersigned finds these statements insufficient to plausibly allege any civil rights claim against Sergeant Meddock. Accordingly, the Undersigned **RECOMMENDS** claim four be **DISMISSED** for failure to state a claim upon which relief may be granted.

    4.  *Count Six Violation of Ohio Public Records Law*

In count six, Plaintiffs allege "Defendants" violated Ohio's public records law—specifically, Ohio Revised Code § 149.43. (Doc. 18-1 at 4). According to Plaintiffs, they "obtained body camera footage under a Freedom of Information Act (FOIA) request, revealing approximately 15 minutes of muted audio during the critical phase of the investigation. This silence occurred while all four troopers were actively conversing." (*Id*. at 5, ¶ 3.16). Plaintiffs contend the "intentional muting of audio obstructs transparency, compromises the integrity of the investigation, and suggests potential misconduct or concealment of improper actions" and "the absence of audio violates public records laws, particularly Ohio Revised Code § 149.43." (*Id*.)

Several problems infect this claim. First, the proper means to assert a claim for violation of Ohio's public records law is to file a complaint with the state court of claims or court of common pleas, pursuant to Ohio Revised Code § 2743.75, or commence a mandamus action seeking compliance. *See* Ohio Rev. Code § 149.43(C)(1)(a), (b); *Ramsey v. City of Cleveland*, No. 1:15-cv-2405, 2017 WL 2671060, at *2 (N.D. Ohio June 21, 2017) (noting when a public records request is not filled within a reasonable time, "the aggrieved party may do one and only one" of the two options set forth in R.C. § 149.43(C)(1) and finding "no claim upon which relief may be granted" in Section 1983 actions); *Santoli v. Vill. of Walton Hills*, No. 1:12-cv-1022, 2014 WL

11

1093093, at *2 (N.D. Ohio Mar. 18, 2014) (dismissing a civil rights claim based on noncompliance with Ohio public records request because "[m]andamus will lie and is indeed the appropriate remedy to compel a public office to disclose records"); *Russell v. Thornton*, No. 2:18-cv-370, 2018 WL 2046387, at *7 (S.D. Ohio May 2, 2018), *report and recommendation adopted*, 2018 WL 5289036 (S.D. Ohio Oct. 24, 2018) (dismissing a Section 1983 claim for lack of subject matter jurisdiction because "the *Rooker-Feldman* doctrine prevents a litigant from collaterally attacking a state court judgment by filing a civil rights complaint" where plaintiff sought review of an unsuccessful O.R.C. § 149.43 mandamus action).

But in this case, Plaintiffs do not allege they were denied access to public records. In fact, Plaintiffs seemingly concede they received the information and recordings they requested. The issue is that some of the audio they received was muted. (Doc. 18-1 at 4). In this, it appears Plaintiffs are attempting to state a claim against the officers for failing to fully record the entire investigative encounter. However, "[f]ailing to provide cameras or record footage cannot alone be a constitutional violation." *Jones v. Louisville/Jefferson Cnty. Metro Gov't.*, No. 3:18-cv-265, 2022 WL 3582181, at *4 (W.D. Ky. Aug. 19, 2022) (collecting cases); *see also Graham v. Rowe*, No. 19-6757, 2019 WL 3059801, at *4 (D. N.J. July 10, 2019) ("There is no constitutional right to be free from an arrest that is not recorded by a camera."); *Baldwin v. Colley*, No. 15-cv-02762, 2015 WL 5836923, at *4 (N.D. Cal. Oct. 7, 2015) (finding, on a motion to dismiss, that "Plaintiffs have not cited any authority that squarely supports their position . . . that the City's non-use of body cameras provides a basis for *Monell* liability"); *Mitchell v. Las Vegas Metro. Police Dep't*, No. 2:18-cv-646, 2021 WL 808735, at *2 (D. Nev. Mar. 3, 2021), *report and recommendation adopted*, No. 2:18-cv-646, 2021 WL 1894242 (D. Nev. May 11, 2021) (dismissing a claim where

plaintiff "alleges [police department] should be held liable for the Officers' failures to 'preserve adequate body camera footage'").

Possibly, Plaintiffs attempt to raise a state law claim for spoliation of evidence. Ohio is one of "only a handful of jurisdictions that recognize the independent tort of intentional spoliation of evidence." *Elliott-Thomas v. Smith*, 154 Ohio St.3d 11 (2018). Under Ohio law, a plaintiff must prove the following five elements in order to establish intentional spoliation of evidence: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29 (1993). But spoliation is "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004). Plaintiffs do not allege that any evidence was willfully destroyed. Instead, they claim the officers failed to keep the audio of their encounter running without any further facts alleged in support. (Doc. 18-1 at 3 (including only a conclusory statement that the muting was "intentional")).

But even more critically, Plaintiffs assert this claim against "Defendants" but do not specify whether Trooper Sabo or Sergeant Meddock were among the "four troopers" who were "actively conversing" when the audio was muted. (Doc. 18-1 at 3–4). A plaintiff must plead sufficient facts that, if true, would establish that the defendant was personally involved in the activities which form the basis of the claim. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995); *Dillon v. Hamlin*, 718 F. Supp. 3d 733, 743-44 (S.D. Ohio 2024). Here, Plaintiffs' First Amended Complaint does not allege facts

13

suggesting the personal involvement of any named Defendant in the muting of the audio, nor does it identify the officers alleged to be involved, including whose audio was muted. (Doc. 18-1 at 4).

As a result, the Undersigned finds that the muting allegations fail to state a claim upon which relief may be granted. For these reasons, the Undersigned **RECOMMENDS** that claim six of the First Amended Complaint **BE DISMISSED with prejudice**.

5. *Conclusion*

In sum, Plaintiffs' claims against Defendant Trooper Sabo in his *individual* capacity under the Fourth Amendment for unreasonable search and seizure, false arrest and imprisonment, malicious prosecution, and excessive force should proceed. *See* (Doc. 18-1 at 3–4). Those allegations are set forth as claims one through three and five. (*Id.*). All other claims should be dismissed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Court **DISMISSES with prejudice** any official capacity claims against Defendants Sabo and Meddock for money damages or injunctive relief.

2. Further, all claims asserting supervisory liability against Defendant Meddock should be **DISMISSED** for failure to state a claim upon which relief may be granted, and Defendant Meddock should be **DISMISSED** as a Defendant to this action. 28 U.S.C. § 1915(e)(2)(B).

3. Finally, claim six which perhaps attempts to state a claim for violation of Ohio's public records law should also be **DISMISSED with prejudice**.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiffs request for additional time to file objections and supporting material regarding the Original Report and Recommendation is **DENIED as moot**. (Doc. 15).

2. The Clerk of Court is **DIRECTED** to file the First Amended Complaint in the docket of this case.  The First Amended Complaint (Doc. 18-1) supersedes the earlier complaint for all purposes.  The Clerk shall **TERMINTE** the pending motions to amend the complaint **as moot**. (Docs. 17, 18).

3. Plaintiffs may **PROCEED** at this juncture on their claims in the First Amended Complaint against Defendant Trooper Sabo only, and in his individual capacity, under the Fourth Amendment for false arrest and imprisonment, unlawful search and seizure, malicious prosecution, and excessive force.  These claims are set forth as claims one through three and five.  (Doc. 18-1 at 3–4).

4. The United States Marshal is **ORDERED** to serve a copy of the First Amended Complaint (Doc. 18-1), the summons (Doc. 18-2 at 3–4), and this Order and Supplemental Report and Recommendation upon Defendant Trooper Sabo as directed by Plaintiffs, with costs of service to be advanced by the United States. (Doc. 18-2 at 3–4; Doc. 18-3 at 1).

5. Plaintiffs shall serve upon Defendant Sabo or, if appearance has been entered by counsel, upon Defendant Sabo's attorney(s), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiffs shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendant or Defendant's counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

6. Plaintiffs shall inform the Court promptly of any changes in their address which may occur during the pendency of this lawsuit.

IT IS SO ORDERED.


Date: December 17, 2024      /s/ Kimberly A. Jolson
                             KIMBERLY A. JOLSON
                             United States Magistrate Judge


## PROCEDURE ON OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN FOURTEEN DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).